455 SEVENTH AVENUE, INC., Respondent, *v.* FREDERICK HUSSEY REALTY CORP., Appellant.

First Department, March 23, 1945.

*Monroe E. Stein* for appellant.

*Leon Lauterstein* of counsel (*Melbourne Bergerman* with him on the brief; *Lauterstein, Spiller, Bergerman & Dannett*, attorneys), for respondent.

Townley, J. Plaintiff, the tenant of certain premises at Seventh Avenue and 34th Street, Borough of Manhattan, brought this action for a declaratory judgment against the defendant corporation, the landlord, to determine the rent due under a renewal clause in the lease.

The lease was executed on January 7, 1924, and was for a term of twenty-one years at an annual rental of $150,000 per year from February 1, 1925, to February 1, 1945. For the year 1924 the rent reserved was $100,000. The tenant agreed under the lease to erect a sixteen-story building, which agreement it performed. Under paragraph XXX of the lease, the tenant was granted an option to renew the lease for a term of twenty-one years to commence February 1, 1945, at a rate to be agreed upon by the parties " but not less than the rent herein reserved ". In the event that the parties could not agree upon the rental for the renewal period, appraisers were to be appointed who were to set the value of the land " and six percent (6%) upon the amount of the appraisement or value of said land so fixed and

determined shall be the annual rent in addition to all other payments herein provided to be made of the said land and building or buildings aforesaid for such further term of twenty-one years from 12 o'clock noon February 1, 1945, and ending 12 o'clock noon February 1, 1966; *in no event is said rental to be fixed at a less sum than herein provided to be paid as the rental for the period ending February 1, 1945.*" (Italics our own.) It is thus apparent that under the lease in no event could the renewal rent be less than $150,000 per year.

The parties modified the lease by an agreement dated February 1, 1930. The modification came about because of a request from the tenant for leave to tear down the building and re-erect a more expensive one better suited to the needs of the occupant, R. H. Macy & Company. Naturally, there were negotiations concerning the terms of the modification agreement. They were reduced to writing and the important part of the agreement provided that on and after February 1, 1930, the tenant should pay further yearly rents, in addition to the yearly rent of $150,000 net per year reserved and contained in the original lease. These additional payments were to be $10,000 for the year February 1, 1930, to February 1, 1931, $20,000 from February 1, 1931, to February 1, 1935, $35,000 from February 1, 1935, to February 1, 1940, $40,000 from February 1, 1940, to February 1, 1943, and $50,000 for each of the two years from February 1, 1943, to February 1, 1945, " so that the aggregate yearly net rent for each of said two years will be $200,000."

The modification agreement (paragraph first) then continued as follows: " All of said additional yearly rents to be paid in equal quarter yearly payments, together with and on the quarter yearly days as reserved in the lease for the payment of the original rent (except that the first year's additional rent will be due and payable in one sum of $10,000 on the day of the execution and delivery of these presents as hereinbefore stated) and the next quarterly installment on the quarter yearly day of February 1, 1931 and quarter yearly thereafter, *with the same force and effect as if said yearly additional rent and said yearly original rent were the yearly rents originally reserved in the said lease.*" (Italics our own.)

The new building was erected and the rent has been paid in accordance with the modification agreement.

The relief demanded in this complaint is for a declaration that the rent payable by the plaintiff during the renewal term of twenty-one years commencing February 1, 1945, is the same as the rent originally reserved for the period in the lease ending

February 1, 1945, and for an injunction restraining the demanding, or instituting an action for, rent for an amount exceeding the sum provided in the original lease.

The need for a declaration arose because the parties agreed among themselves that if an appraisal of the land were made, 6% of the value of the land determined by the said appraisal would be less than the rent reserved and that each party reserved its rights to a judicial determination of the construction and effect of the lease and modification agreement with respect to the rent payable during the proposed renewal term.

The judgment provided that the proper construction of the original lease and the modification agreement "is that the minimum net rent for the first renewal term of said Lease, for the period of twenty-one years commencing February 1, 1945, is the net rent reserved in said Lease for its original term, to wit, $100,000 for the first year and $150,000 for each of the succeeding twenty years; and that such minimum net rent does not include the additional payments which plaintiff agreed to pay during a part of the original term of the Lease for the privilege of demolishing the existing building and erecting a new building in its place.

" SECOND: The background of said Modification Agreement and the circumstances attending its negotiation and execution show that the parties intended by such agreement that the ' additional yearly rents' therein provided to be paid should be paid only during the remainder of the original term of the Lease which ends February 1, 1945, and not thereafter or during any renewal term of said Lease."

This result was reached at the trial by accepting in evidence certain written documents in the case and permitting a lawyer named Appel who had represented the defendant, Frederick Hussey Realty Corp., at the time of the making of the modification agreement, to testify to the fact that at no time during the negotiations was there any discussion about the payment of additional rent during the renewal period. The precise question to which Mr. Appel gave the answer "no" was: "Was there any talk at all between you and Mr. Seligsberg by which for the privilege that the tenant was asking, to wit, the demolition of the building, and the building of the new one, that the tenant should pay any additional rent during the renewal period?"

Counsel for the defendant objected to the admission of this testimony on several grounds: (1) that there was no competent proof that Appel was ever retained by the Frederick Hussey

Realty Corp. to negotiate the terms of the lease, (2) that whatever testimony the witness did give as to his hiring was of an oral conversation with the deceased Frederick Hussey which was a privileged communication and that, therefore, his agency had not been proven by competent evidence, and (3) that there was an issue here of the construction of the written instrument, the execution and delivery of which were acknowledged by both parties, that the instrument was clear and unambiguous, that any negotiations which preceded it were merged in the instrument and were contained therein and that testimony as to prior negotiations was immaterial and incompetent.

It may be noted in passing that on the cross-examination it was brought out that plaintiff's witness had had a somewhat serious dispute over his fees with Mr. Hussey and that he had not been retained by the defendant corporation thereafter.

The first two objections were not well taken. The third objection, however, should have been given consideration. The testimony offered was not competent evidence as to the construction of the instrument as it stands and as it was executed. The law is clear that in the absence of ambiguity the instrument must be construed as it is written. There were no circumstances here to justify any exception to the parol evidence rule. That rule is particularly important in a case like the present one where Mr. Hussey has died and we are unable to determine from him his version of what the underlying purpose of the modification agreement and the extent thereof were intended to be, assuming that such issues were to be litigated.

However, considering the testimony as given and assuming its competence for the purposes of this discussion, the purport of it is clearly not material. The testimony that no reference was made or intended to be made to any renewal privilege may be literally true. It was, however, unnecessary to make such a reference since by the terms of the modification agreement above quoted, the total of the original and additional rents was incorporated in the original lease as if this new total " were the yearly rents originally reserved in the said lease." Since the renewal clause was not changed in any relevant respect and since the rent reserved was specifically changed, the conclusion is inescapable that at the date of the termination of the lease, the rent reserved was, and was intended to be, $200,000 per year.

We draw attention again to the provision in the renewal portion of the lease which states that in no event is the rental to be fixed at a less sum than is provided in the lease " to be paid as the rental for the period ending February 1, 1945." A reading

of these two provisions together makes it clear enough that the parties intended to pay an increased rent reserved under the lease for the privilege of constructing the new building.

The modifying agreement was carefully drawn by counsel who were obviously aware of the important and substantial interests involved. The agreement covers thirty pages of the printed record and makes provision for every possible contingency that might arise under the modified agreement. The general scheme indicates an intention, frequently expressed, that the modification should become a part of the original lease as though originally contained therein. The new agreement made changes in some of the renewal provisions as to a possible taking of the building in condemnation, thus indicating that the effect of the changed situation created by the new agreement in relation to the renewals had been considered. The testimony shows that an attempt was made by the tenant to fix a maximum renewal rent of $200,000 but that this offer was refused.

The rent to be paid for the renewal period was of major importance, and yet we find nowhere in the modifying lease a simple provision that the rent for the renewal period shall be determined by the rental as fixed by the original lease, as now claimed. Instead, to repeat once more this crucial clause, we find the express provision that the new rent schedule shall be paid " with the same force and effect as if said yearly additional rent and said yearly original rent were the yearly rents originally reserved in the said lease.'' This clearly establishes that the parties understood that the new rent was to constitute the measure of the tenant's liability for all purposes.

The tenant seeks to attach significance to the fact that the parties in the amended agreement fixed the rental only for the balance of this original term. This point is without substance. The balance of the original term was the only period for which a fixed rental could be made. No one could determine in advance the rent for the renewal lease. The renewal clause controlled this and fixed the standard by which it was to be determined at the end of the first period.

If the testimony which should have been excluded establishes anything material to the question herein, it tends to support the view that it was the clear intention of the parties to establish a permanent increase in the rent reserved.

We, therefore, construe the modification agreement to mean that the rent reserved in the original lease as of the period ending February 1, 1945, is $200,000 per annum and that the rent for the renewed term can in no event be less than that amount.

The judgment should be reversed, with costs, and judgment entered for the defendant in accordance with this opinion, with costs.

GLENNON, J. (dissenting). To determine the issue presented it is unnecessary to look beyond the contents of the written instruments themselves. It is clear from a reading of the lease as modified by the agreement of February 1, 1930, that the parties intended the "additional yearly rents" to apply only to the balance of the original term and was not to be carried over into any renewal period.

In the main, the modification agreement concerned itself with the demolition of the then existing building and the erection of another. Included in the consideration running to the landlord for the additional privileges granted was the obligation on the part of the tenant to pay certain specified amounts as "additional yearly rents". That portion of the modifying agreement reads, in part, as follows:

"FIRST: That the said Tenant on and after February 1, 1930 will pay additional yearly rents unto the Landlord, in addition to the yearly rent of $150,000 net per year, reserved and contained in the aforesaid lease, the following as additional rent;

"TEN THOUSAND ($10,000) Dollars for one year from February 1, 1930 to February 1, 1931; so that the aggregate yearly net rent for that year will be $160,000; said $10,000 to be paid on the execution and delivery of these presents;

"TWENTY THOUSAND ($20,000) Dollars for each of the four years from February 1, 1931 to February 1, 1935, so that the aggregate yearly net rent for each of said years will be $170,000;

"THIRTY-FIVE THOUSAND ($35,000) Dollars for each of the five years from February 1, 1935 to February 1, 1940, so that the aggregate yearly net rent for each of said five years will be $185,000;

"FORTY THOUSAND ($40,000) Dollars for each of the three years from February 1, 1940 to February 1, 1943, so that the aggregate yearly net rent for each of said three years will be $190,000;

"FIFTY THOUSAND ($50,000) Dollars for each of the two years from February 1, 1943 to February 1, 1945, so that the aggregate yearly net rent for each of said two years will be $200,000."

It is quite obvious that the foregoing provision was very carefully worded. Use of the term "increased rentals" was avoided. The original rents reserved were not replaced by new rentals. On the contrary, they were reaffirmed and an additional obligation undertaken by the tenant to pay certain other

amounts designated as "additional yearly rents." The two are treated as separate obligations which were to be paid at the same time. A holding that the above-quoted provisions increase the original rents fails to give full effect to the wording used.

As pointed out in the majority opinion, the modifying agreement was carefully prepared by attorneys who were well aware of the substantial interests involved and the importance of each provision to their respective clients. It cannot be said that they intended to unduly lengthen the agreement or render its most vital provisions cumbersome by the inclusion of meaningless language. If an increased rental was all that was intended, the parties could have very simply and effectively provided that the rents were being increased to certain specified amounts. There would have been no need to distinguish between the original and additional rents since the distinction would only amount to just so much verbiage. Such agreements, however, are not hastily nor loosely put together. They are carefully drawn with each phrase and each word carefully weighed and considered before being inserted in its proper place. In construing the finished product, therefore, effect must be given to all of the language used. Here the provision that certain yearly amounts, designated as "additional yearly rents", were to be paid "in addition to the yearly rent" reserved in the lease clearly indicates that no mere increase in the original rentals was intended.

Attention is called to the statement contained in paragraph "First" of the modifying agreement to the effect that the additional rents are to have the same force and effect as if they were part of the original rents reserved. That statement must be considered in its relation to the agreement as a whole and the purpose it was intended to serve. In this connection the care with which the agreement was prepared is again apparent. Marginal captions were inserted indicating the point a particular paragraph was intended to cover. The statement referred to is found in the paragraph dealing with payment of the additional rents.

The pertinent portion of that paragraph provides: "All of said additional yearly rents to be paid in equal quarter yearly payments, together with and on the quarter-yearly days as reserved in the lease for the payment of the original rent * * * with the same force and effect as if said yearly additional rent and said yearly original rent were the yearly rents originally reserved in the said lease."

It is obvious that this provision merely fixes the time and manner of payment of the additional rents. For that purpose the original and the additional rents are to be considered as one. That part of the agreement, however, again reveals that the parties considered the original rents and the additional rents as separate obligations of the tenant and not as an increased rental.

It is to be noted also that not once in the modifying agreement is the term " increased yearly rents " used. Instead careful use of the term " additional yearly rents " is made. The only significance that can be attached to the use of that term, especially when a more appropriate one could have been used, is that the additional rents were to be distinguishable from the original rents for some purpose. What that purpose was becomes clear when the renewal provisions are considered.

While the modifying agreement contains a provision that with respect to payments the additional rents are to be considered as part of the original rents, no similar provision was made with respect to renewals. In fact, it contains nothing which in any way changes the renewal provisions of the lease. The renewal, therefore, is to be governed by paragraph XXX of the lease. With respect to the renewal rental, that paragraph provides that " in no event is said rental to be fixed at a less sum than *herein provided* to be paid as the rental for the period ending February 1, 1945." (Italics mine.) The rents therein provided are the original rents. The obligation to pay additional rents is provided for in the modifying agreement and no provision was made for its consideration in determining the renewal rental. On a question of such major importance to both parties, the omission is very enlightening for it indicates that only the original rents reserved were to be considered. Since the original rent for the period ending February 1, 1945, was at the rate of $150,000 per year the rental for the renewal period may not be less than $150,000 per annum for the entire renewal period. Such a construction is the only one which gives full effect to the carefully worded provisions of the lease as modified, and carries out the intention of the parties as therein expressed.

Accordingly, I dissent and vote to modify as hereinabove indicated.

MARTIN, P. J., and DORE, J., concur with TOWNLEY, J.; GLENNON, J., dissents in opinion, in which UNTERMYER, J., concurs.

Judgment reversed, with costs, and judgment directed to be entered for the defendant in accordance with the opinion of

TOWNLEY, J., with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.